UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

      Plaintiff,

    v.                                  Case No. 06-CR-100

ALVIN FOUSE, JR., ALVIN FOUSE III,
JUAN GARCIA, MARIO GARCIA,
RAYMOND GARCIA, and
JAVELL MAYFIELD,

      Defendants.

---

**RECOMMENDATION AND ORDER ON PRE-TRIAL MOTIONS
FILED BY ALVIN FOUSE, JR. AND ALVIN FOUSE III**

---

On May 2, 2006, a grand jury sitting in the Eastern District of Wisconsin returned a three-count indictment, along with forfeiture notice, against the above named individuals. Count One of the indictment charges Alvin Fouse III, Juan Garcia, Mario Garcia, Raymond Garcia, and Javell Mayfield with conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841 and 846, and 18 U.S.C. § 2. Count Two charges Alvin Fouse III with possession of a firearm during, in relation to, and in furtherance of the drug trafficking crime charged in Count One, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2. Count Three charges Alvin Fouse, Jr. and Alvin Fouse III with conspiracy to launder money which was the proceeds of the distribution of controlled substances, in violation of 18 U.S.C. § 1956.

Currently pending before the court are certain motions filed by defendants Alvin Fouse, Jr. ("Fouse Jr.") and Alvin Fouse III ("Fouse III"). Specifically, on November 13, 2006, the Fouses

1

jointly filed a motion to suppress evidence seized from 717 Center Street, Racine, Wisconsin; on November 13, 2006, Fouse III filed a motion to compel the disclosure of a confidential informant; on November 15, 2006, the Fouses jointly filed a motion to suppress evidence seized from 1900 21st Street, Racine, Wisconsin; and on November 15, 2006, Fouse III filed a motion to suppress statements.

**1. Fouse III's Motion to Suppress Statements**

An evidentiary hearing was scheduled to be conducted on December 20, 2006, for the purpose of addressing Fouse III's motion to suppress statements. However, on December 18, 2006, government counsel filed a letter with the court in which he stated as follows;

> The purpose of this letter is to advise the court that the government has reviewed the motion to suppress statements filed by Alvin Fouse III and the government agrees that the two statements listed in the defendant's motion should be suppressed. The government agrees that it will not use the statements at trial. The government further advises the court the evidentiary hearing scheduled for later this week should be cancelled.

In light of government counsel's letter, the evidentiary hearing was cancelled. Furthermore, in light of the government's concession with respect to the defendant Fouse III's motion to suppress statements, it will be recommended that Fouse III's motion to suppress statements be granted.

**2. Fouse III's Motion to Compel Disclosure of Confidential Informant**

Fouse III seeks disclosure of the identity of that person referred to as CI # 3 in the affidavit filed in support of the search warrants for 717 Center Street and 1900 21st Street, Racine, Wisconsin, on August 18, 2005. According to Fouse III,

> CI #3 claims to have been in the presence of Matthew Zamecnik on July 31, 2005. CI #3 claims to have accompanied Matthew Zamecnik to 717 Center St., and observed him open a combination safe and show CI #3 handguns that were in the safe. Further, that Zamecnik showed CI #3 bundles of money within a drawer.

> CI #3 claims to have witnessed Zamecnik make keyed entry to the same building in January of 2005 and retrieve a substance believed to be cocaine while in the building. CI #3 heard Zamecnik making comments about being a drug dealer and making large amounts of money on August 5, 2005.
>
> Alvin Fouse III moves the court for disclosure of the identity of CI #3 for the purpose of interviewing CI #3 to ascertain further details of his observations in order to develop evidence, which would support the defense theory that the physical items seized from 717 Center St. and 1900 21st St., were, in fact, possessed by Matthew Zamecnik and not possessed by Alvin Fouse III.

(Mot. at 1-2.)

It is well established that the government has a limited privilege to withhold from disclosure the identity of a confidential informant. *Roviaro v. United States,* 353 U.S. 53, 60 (1957).

> The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

*Id.* at 59. However, in *Rovario* the Supreme Court held that where an informant is a transactional witness, that is, where he or she was an active participant in the events leading to an arrest, the government must disclose the informant's identity to the defendant. *Id.* at 60.

Therefore, when determining whether to compel disclosure of an informant's identity, courts must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* at 62. The government's limited privilege of withholding the identity of an informant gives way once the defendant proves that the information sought would significantly aid in the preparation of his defense. *United States v. Andrus*, 775 F.2d 825, 841 (7th Cir. 1985). Absent such a showing, disclosure is not required. *Id.*

The government has not responded to Fouse III's motion for disclosure. That the government

3

has not responded to the motion for disclosure (while it has responded to the other motions) leads the court to conclude that the government does not oppose Fouse III's motion for disclosure. Moreover, it would appear, in any event, that Fouse III has demonstrated a legitimate need for the identity of CI #3, which would outweigh the government's interest in keeping the identity of CI #3 confidential. Thus, Fouse III's motion for disclosure of the identity of CI #3 will be granted. More precisely, in light of the fact that the trial in this action is scheduled to commence on February 12, 2007, the government will be ordered to disclose to Fouse III's counsel the identity of CI #3 no later than January 10, 2007.

**3. Fouse Jr. and Fouse III's Motions to Suppress Evidence Seized at 717 Center Street and 1900 21st Street, Racine, Wisconsin**

Fouse Jr. and Fouse III have filed joint motions to suppress the evidence that was seized at 717 Center Street and 1900 21st Street, Racine, Wisconsin. They argue that the warrants authorizing the search of those two locations were not supported by probable cause. Additionally, they argue that the good faith exception under *United States v. Leon*, 468 U.S. 897 (1984) does not salvage the searches. In that latter connection, in *Leon* the Court held that an officer's good-faith reliance on a magistrate's determination of probable cause should not lead to the exclusion of probative evidence simply because a reviewing court later ruled that probable cause did not exist. The Court held that in the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause. 468 U.S. at 923-25.

The search warrants for both locations were supported by the same affidavit. Such being the

4

case, it is necessary to examine the affidavit in order to determine whether the warrants were supported by probable cause. However, in doing so this court must keep in mind that its role is limited. The duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983).

Probable cause is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.* at 238. Probable cause exists when it is reasonably believed that the evidence sought will aid in the prosecution of a particular offense and the evidence is located in the place to be searched. *See United States v. McNeese*, 901 F.2d 585, 592 (7th Cir. 1990), *overruled on other grounds by United States v. Nance*, 236 F.3d 820 (7th Cir. 2000). "Probable cause denotes more than a mere suspicion, but does not require certainty." *United States v. Fleischli*, 305 F.3d 643, 651 (7th Cir. 2002) (internal quotations omitted). "'In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *United States v. Kimberlin,* 805 F.2d 210, 228 (7th Cir. 1986) (quoting *Brinegar v. United States,* 338 U.S. 160, 175 (1949)).

Probable cause is a fluid concept turning on the assessment of probabilities in a particular factual context. "Rather than viewing bits and pieces of a probable cause showing in isolation, the court must focus on all the facts presented to the magistrate." *United States v. Markling*, 7 F.3d 1309, 1317 (7th Cir. 1993). A search warrant may issue "even in the absence of [d]irect evidence linking criminal objects to a particular site." *United States v. Sleet*, 54 F.3d 303, 306 (7th Cir. 1995) (internal quotations omitted). "The [judicial officer] to whom the warrant application is directed is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature

5

of the evidence and the type of offense, and the [judicial officer] need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." *Id.* (internal quotations omitted).

A judicial preference is to be accorded warrants in those cases where there is a close or marginal showing of probable cause. In reviewing prior probable cause findings made by a judicial officer in issuing a warrant, "great deference" is to be accorded to that determination. *United States v. Leon*, 468 U.S. 897, 914 (1984); *United States v. Pless*, 982 F.2d 1118, 1124 (7th Cir. 2002) (stating that "doubtful cases are to be resolved in favor of upholding the warrant"). The Seventh Circuit Court of Appeals has held that the standard of review of a determination that probable cause exists supporting issuance of a search warrant is "one of affirmance absent clear error by the issuing magistrate." *Pless*, 982 F.2d at 1124. Indeed, "[a] magistrate's determination of probable cause 'is to be given considerable weight and should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated.'" *United States v. Newsom*, 402 F.3d 780, 782 (7th Cir. 2005) (quoting *United States v. Spry*, 190 F.3d 829, 835 (7th Cir. 1999)).

The affidavit was executed by Randal E. Kuzia ("Kuzia"), an Investigator for the Special Investigations Unit of the Racine Police Department, on August 18, 2005. In his affidavit Kuzia sets forth the nature and extent of his 26 years of experience as a police officer and investigator. In that connection, he sets forth in detail his observations of the practices and methods of operation of drug dealers, including, *inter alia*, how they launder and otherwise conceal their ill-gotten profits, what type of equipment they use and maintain in connection with their drug business, and what types of

6

records they keep with respect to their drug business. He further avers that "[t]hese records . . . are often maintained at the drug trafficker's residence or other location under his control." (Aff. ¶ 7e.)

Kuzia sets forth the following with respect to information he received from certain named individuals and certain confidential informants:

> 9. That your affiant is aware of interviews conducted by Investigator Shortess with an Anthony Boyden on 06/06/2002 and 06/07/2002 during which Anthony Boyden admits to being a part of a cocaine distribution network run by Alvin Fouse and Rosendo Heredia.
>
> 10. That Anthony Boyden reports that on at least one occasion during October, 2001, he accompanied Alvin Fouse to a garage in the 700 blk of Center Street where Fouse accessed an undetermined quantity of cocaine.
>
> 11. That Anthony Boyden reports Alvin Fouse and Rosendo Heredia to be aligned with the Black Pea Stone Rangers and Vice Lords street gangs and both have been involved in gun violence against rival street gang members and other drug dealers.
>
> 12. That your affiant relies on information supplied by Anthon Boyden as Boyden made statements against his own interest and the information was documented by Investigator Shortess preparing official reports relating to his Police duties.
>
> 13. That your affiant is aware of a property at 717 Center Street, that over the time frame described by Boyden, was being operated by Alvin Fouse Jr., the father of Alvin Fouse as an auto repair shop. That your affiant believes the property at 717 Center Street i[s] no longer an active business based on the lack of traffic associated with such a business, which your affiant observes on a daily basis given its close proximity to the Racine Police Department.
>
> 14. That your affiant received information from a reliable confidential source (CI#1) who reports to have observed Alvin Fouse making cocaine deliveries on at least 30 occasions between September 2004 and December 2004. That the CI reports Alvin Fouse to be currently active in the sale of cocaine.
>
> 15. That your affiant believes the information supplied by CI#1, as the CI has supplied information about on-going criminal activity to the Racine Police Department Special Investigations Unit that has resulted in at least 20 misdemeanor arrests over the past six months. That these arrests were made as a direct result of search warrant execution based on this information or as an immediate response to the information provided by CI#1.

16. That your affiant received information from Investigator Nikolai of the Federal Drug Administration Task Force who reported to have received information from a reliable confidential source (CI#2) reporting to have overheard conversations between Alvin Fouse and a potential cocaine buyer within the past week and occurring near 12th and Center Street. That during this conversation Alvin Fouse agrees to the sale and states to the buyer "its close by", this making reference to a "stash" location, typically employed by those involved in drug sales. That the CI reports Alvin Fouse to be currently active in the sale of cocaine.

17. That your affiant relies on information supplied by Investigator Nikolai as Investigator Nikolai is [a] Federal Drug Enforcement Agent acting in an official capacity and relies on information supplied by CI#2 as CI#2 has carried out several controlled buys under the direction of the Drug Enforcement Administration that will result in drug charges against several defendants. Additionally, CI#2 has provided information about 10 other drug dealers operating in and around the City of Racine that has been cooborated [sic] through other reliable sources and/or independent investigations.

18. That you affiant and other members of the Racine Police Department have conducted random surveillance at 717 Center Street over the past six weeks and have observed Alvin Fouse and Rosendo Heredia making frequent visits to the property and vehicles associated with them parked in close proximity.

19. That on August 12th, 2005, your affiant became aware of a named citizen who had made contact with the Racine Police Department and wanted to provide information about an ongoing cocaine conspiracy.

20. That on August 15th, 2005, your affiant interviewed the named citizen (CI#3) who reported familiarity with Alvin Fouse and Matthew Zamecnik, a half brother to Alvin Fouse who along with others are involved in a cocaine conspiracy.

21. That CI#3 reports Alvin Fouse to be residing at 1900 21st Street with his mother and Matthew Zamecnik to be residing at 1108 Park Avenue with their father Alvin Fouse Jr.

22. Your affiant through various record sources including Racine Police Records and Department of Motor Vehicle and licensing that Alvin Fouse has identified 1900 21st Street, Racine, Wisconsin as his residence.

23. That CI#3 reports that at one time Alvin Fouse Jr operated an auto repair business at 717 Center Street that is no longer operating. CI#3 reports the garage and adjoining office and storage space is used by Alvin Fouse, Matthew Zamecnik and their associates.

24. That CI#3 reports that in January, 2005, CI#3 had accompanied Matthew Zamecnik to the property at 717 Center Street where Zamecnik makes keyed access and after going into an office space Zamecnik retrieves a plastic baggie containing a white chunky substance from a desk drawer purported by Zamecnik to be crack cocaine.

25. That CI#3 reports that on or about July 31st, 2005, CI#3 had again accompanied Matthew Zamecnik to 717 Center Street to be shown a vehicle by Zamecnik that had been purchased by Alvin Fouse. That after looking at the vehicle Zamecnik stated something to the [e]ffect of "do you want to see something". That Zamecnik and CI#3 went into an office space where Zamecnik opens a lower desk drawer to reveal bundles of U.S. currencey purported by Zamecnik to be "millions". that Zamecnik th[e]n opens a combination safe and removes two revolvers to show CI#3. That CI#3 reports to see parts of at least two additional handguns within the safe.

26. That CI#3 reports that Zamecnik made several statements while showing the currency and guns including "we're blowing up", a slang reference to making a lot of money selling cocaine, and "the feds can't even touch "Stone", an apparent reference to Alvin Fouse' continuing cocaine sales without any police intervention.

27. That CI#3 reports that in the early morning hours of August 5th, 2005, CI#3 was a patron at a local bar that was also being patronized by Matthew Samecnik [sic] and a female Police Officer known to CI#3 as Justine Dunday. That CI#3 heard Matthew Zameonik [sic] yelling at Dunday "fuck the police" and "I make more money than you'll ever see." That Dunday attempts to leave the bar and Zamecnik pursues her continuing to yell with Zamecnik making physical contact with Dunday and requiring CI#3 and another bar patron to physically restrain Zamecnik to allow Dunday to leave the bar.

28. That on August 17th, 2005, your affiant made contact with Justine Dunday who identified herself as a Wisconsin certified law enforcement officer and employee of the UW Parkside campus Police. Dunday reports that on August 5th, 2005, she and a female friend who is an ex-girlfriend of Matthew Zamecnik were leaving a local bar when Zamecnik drove by and offered to give them a ride to a second bar where Dunday was to meet CI#3. Dunday and her friend were driven to the second bar by Zamecnik and while enroute Zamecnik who is aware of Dunday's profession states "you're in a drug dealer's car" and "this car is worth more than your years wages."

29. That Dunday reports that after having arrived and going into the second bar she suggests to Zamecnik that he not make statements to her about his drug activity. This apparently angered Zamecnik prompting a response from Zamecnik of "fuck the police" and "I make more money than you'll ever see." Dunday sensing Zamecniks anger attempts to leave the bar and is pursued by Zamecnik who strikes her in the

9

face with a baseball cap before CI#3 and others restrain Zamecnik allowing Dunday to leave.

30. That your affiant believes the information supplied by CI#3, as CI#3 is a known citizen that has not requested any consideration, monetary or otherwise and further that the person providing the information indicated that he/she was doing so because they were aware of the dangers of this type of drug activity, indicating that the information was provided out of a spirit of good citizenship.

31. That your affiant believes the information provided by Justine Dunday as she is a sworn law enforcement officer and provided information as part of her assigned duties and activities.

32. Your affiant conducted some background investigation on Alvin Fouse, DOB: 04/09/1973 and found prior arrests that include carrying a concealed weapon, endangering safety by use of a weapon, obstructing Police and possession of THC.

33. That your affiant conducted some background investigation on Rosendo Heredia and found prior arrests that include carrying a concealed weapon, fleeing/eluding Police, obstructing the Police, possession of cocaine with the intent to deliver and currently has a parole status.

. . . .

46. That your affiant has personally observed the property at 717 Center Street and describes it as a one story, commercial type building of brick construction, brown in color with the numbers "717" affixed to the entry door on the west face of the building.

47. That your affiant has personally observed the residence at 1900 21st Street and describes it as a one story, single family dwelling of wood construction, white and blue in color with the numbers "1900" affixed to the south face of the home.

48. That your affiant checked with WE Energies and learned that the on-line customer for 717 Center Street is a Alvin Fouse Jr. since 1986 and known to your affiant as the father of Alvin Fouse and Matthew Zamecnik.

49. That your affiant checked with WE Energies and learned that the on-line customer for 1900 21st Street is a Alvin Fouse Jr. since 1972.

(Aff. ¶¶ 9-33; 46-49.)

There are a number of reasons advanced by the Fouses in support of their motions to

suppress. They argue that the information is stale ("Three year old information from an informant named Anthony Boyden"; "Eight to eleven month old information from another source, 'CI #1'". (Br. at 2.)). They also argue that there is a lack of specificity with respect to the information given by Boyden, by CI #1, and by CI #2 (Boyden "claimed to have been with Alvin Fouse, III when he 'accessed an undetermined quantity of cocaine' in the 700 block of Center Street."; "'CI #1' . . . claimed to have observed Alvin Fouse 'making cocaine deliveries on at least 30 occasions between September 2004 and December 2004,' and that Mr. Fouse was 'currently active in the sale of cocaine.'"; "Conversation purportedly overheard by yet another unnamed informant ('CI #2') having taken place 'between Alvin Fouse and a potential cocaine buyer within the past week and occurring near 12th and Center Street.' The affidavit offers no further specifics about quantities or prices or when the transaction was to have occurred." (Br. at 2-3.))

They also argue that, with respect to Boyden,

> [t]he affidavit left out a number of salient facts. First, Boyden had been in custody for seven months at the time of these interviews [June 6 and June 7, 2002] on felony theft and felony battery charges and was clearly seeking to make a deal. Second, the affidavit failed to mention that on November 19, 2003, one day after his release on bond in those cases, Boyden was arrested on felony bond violations and drug possession and held in jail until his convictions following a jury trial in February 2004. Finally, Kuzia wrote nothing of Boyden's claim during the debriefings that he was a "gigolo" and serviced women on Racine's north side.

(Br. at 2.)

The Fouses conclude by asserting that "[w]ithin the four corners of the affidavit, there is no claim that investigators conducted successful controlled buys, or obtained incriminating evidence through wire tap, garbage swipes or any other means." (Br. at 4.)

To be sure, the information provided by Boyden was somewhat dated. So too was the

11

information provided by CI #1, although less so. Nevertheless, the information provided by both of them served as a backdrop for the more current information provided by CI #2 and CI #3. Indeed, a mere one week before the affidavit was signed, CI #2 told Investigator Nikolai that he/she had overheard Alvin Fouse and a potential cocaine buyer having a conversation during which Fouse told the buyer that the drugs were "close by." That this conversation took place near 12th and Center Street served to help corroborate the information previously provided by Boyden and CI #1. Specifically, it served to help corroborate the fact that Fouse dealt drugs and that the place he used to store his drugs was in the vicinity of the 700 block of Center Street. Even more significantly, it served to demonstrate that Fouse was still dealing drugs in 2005, as he had been doing in October 2001 (according to Boyden) and between September 2004 and December 2004 (according to CI #1).

It is also correct to say that the information which was provided by Boyden, CI #1, and CI #2 was of a somewhat general nature. And, the items of information provided by each of them may not have demonstrated probable cause if viewed in isolation from one another. But, to view them in isolation from one another is precisely what a reviewing court should not do. "Rather than viewing bits and pieces of a probable cause showing in isolation, the court must focus on all the facts presented to the magistrate." *United States v. Markling*, 7 F.3d 1309, 1317 (7th Cir. 1993). When viewed altogether, the items of information provided by Boyden, CI #1, and CI #2 corroborate each other and paint a picture showing a likely course of continued drug dealing by Fouse III.

The Fouses also argue that the state court judge who issued the search warrants should have been told more about Boyden's criminal background. However, that Boyden may have been in custody for seven months at the time he gave his statements on June 6 and 7, 2002, and that he claimed to be a gigolo are not, in my opinion, facts that, if they had been presented to the state court

12

judge, would have made a material difference to the judge. After all, the affidavit already asserted that Boyden had admitted "to being a part of a cocaine distribution network run by Alvin Fouse and Rosendo Heredia." (Aff ¶ 9.) So the issuing judge already knew that Boyden was a less than savory character. And the fact that Boyden was convicted in February 2004 of drug possession (well after he gave his statements to Investigator Shortess in 2001) would hardly have rendered Boyden less reliable than he already was in 2001, when he admitted to being a drug dealer.

In any event, the suspicion that Fouse III may have been using the 717 Center Street property as a drug "stash house" grew into a probability (if not a virtual certainty) when CI #3 told law enforcement about the remarkable events of January 2005, July 31, 2005, and August 5, 2005, all of which he had personal, first-hand knowledge. Indeed, Police Officer Dunday's confirmation of Zamecnik's foolhardy behavior provided the icing on the cake with respect to providing probable cause to believe that he and Fouse III (Zamecnik's half brother) were still selling drugs as of August 2005 and that evidence of such drug dealing would be found at 717 Center Street.

And so, I am persuaded that the affidavit presented to the state court judge on August 18, 2005, sets forth probable cause to believe that evidence of drug dealing would be found at 717 Center Street, Racine, Wisconsin, on August 18, 2005.

In support of his motion to suppress evidence seized at 1900 21st Street, Fouse III argues that "[t]here is literally nothing within the four corners of the affidavit that would suggest that evidence of a crime would be found at the 1900 21st St. address." (Br. at 3.) I disagree.

As the defendant correctly notes, the very same affidavit was used to support the warrant applications for both 717 Center Street and 1900 21st Street. And, for the reasons set forth above, I am persuaded that the affidavit sets forth probable cause to believe that Fouse III was dealing drugs

13

as of August 18, 2005, and that evidence of such drug dealing would be found at 717 Center Street. To be sure, by contrast to the evidence offered with respect to 717 Center Street, the only evidence offered in the August 18, 2005 affidavit <u>expressly</u> relating to1900 21st Street was that (1) according to CI #3, Fouse III lived with his mother at that address (Aff. ¶ 21) and (2) since 1972, the on-line customer for that address was Alvin Fouse Jr. (Fouse III's father) (Aff. ¶ 49.)

However, in his affidavit Kuzia also avers:

[7]e. Drug traffickers commonly provide cocaine and/or other controlled substances on consignment to their customers and they maintain books, receipts, notes, ledgers and other records reflecting the ordering, sale and distribution of these controlled substances. Such records also typically provide evidence as to the identity of additional criminal associates who are facilitating the laundering of the drug proceeds on behalf o[f] a drug trafficking organization. <u>These records</u>, unlike the controlled substances, <u>are often maintained for long periods of time at the drug trafficker's residence</u> or other location under his control.

[7]f. It is common for large-scale drug traffickers to conceal drugs, United States currency, monetary instruments, precious metals, jewelry and other items of value in secure locations <u>within their residences</u>, businesses and public storage facilities to avoid detection by law enforcement authorities.

[7]g. <u>Persons involved in large-scale drug trafficking also maintain evidence of financial transactions relating to the expenditure or disposition of large sums of money from the profits of drug sales</u>, such as personal financial statements, passbooks, money drafts, letters of credit, money orders, cashiers checks, bank checks, investment records, stock and bond records, tax records, diaries, handwritten notes and money wrappers <u>in the residence</u> or other locations under their control. These records are often maintained for extended periods of time, often years, and can be used to identify the receipt of funds derived from a criminal activity as well as trace the ultimate disposition of the funds.

[7]h. Individuals attempting to conceal their assets, and other individuals receiving income from illegal sources often secret currency and other monetary instruments within safe deposit boxes and that the <u>keys and rental agreements for these boxes are often maintained within an individual's residence</u>.

[7]i. Cocaine is not commonly manufactured within the United States, and Wisconsin is not a major distribution point for cocaine within the United States. It

14

> is common for cocaine traffickers to travel to and from major distribution centers . . . . <u>Drug traffickers often maintain records of the above-referenced transportation in their residence</u> or locations under their control.
>
> . . . .
>
> [7]m. <u>Drug traffickers usually keep paraphernalia for packaging, cutting, weighing and distributing their drugs in their residence or business.</u> This paraphernalia includes scales, packaging materials and cutting agents.
>
> [7]n. <u>Drug traffickers take or solicit photographs or videotapes to be taken of themselves, their associates, their property, their possessions, and their illegal drugs and usually maintain these photographs and/or videotapes at their residence.</u>

(Aff. ¶¶ 7e-7i; 7m-7n; emphasis added.)

Based on all of the foregoing, I conclude that Kuzia's affidavit sets forth probable cause to believe that, as of August 18, 2005, (1) Fouse III was dealing drugs, (2) Fouse III resided at 1900 21st Street, and (3) items such as those identified in paragraphs 7e-7i, and 7m-7n would be found at Fouse III's residence. Indeed, the Seventh Circuit has expressly stated that "[i]n the case of drug dealers, evidence is likely to be found where the dealers live." *United States v. Lamon*, 930 F.2d 1183, 1188 (7th Cir. 1991) (quoting *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (7th Cir. 1986)). The evidence of Fouse III's long-term drug dealing activities as described by Boyden, CI #1, CI #2, and CI #3, "along with [Kuzia's] experience that drug dealers often hide money, drugs, and other incriminating evidence at their permanent residences [] provided a substantial basis for a finding of probable cause" to believe that evidence of drug dealing would be found at Fouse III's residence. *Lamon*, 791 F.2d at 1190. Such being the case, it follows that Fouse III's motion to suppress physical evidence seized from 1900 21st Street must be denied.

Finally, because this court has found the search warrants to have been issued on probable cause, there is no need to address the government's contention that, in any event, the searches should

15

be upheld pursuant to the good faith doctrine of *United States v. Leon*.

**NOW THEREFORE IT IS RECOMMENDED** that Fouse III's motion to suppress statements (dkt. #103) be **GRANTED**;

**NOW THEREFORE IT IS ORDERED** that Fouse III's Motion to Compel Disclosure of Confidential Informant (dkt. #95) be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that <u>on or before January 10, 2007</u>, the government shall disclose to Fouse III's counsel the identity of CI #3;

**IT IS FURTHER RECOMMENDED** that the Fouses' motion to suppress evidence seized at 717 Center Street (dkt. #96) be **DENIED**;

**IT IS FURTHER RECOMMENDED** that the Fouses' motion to suppress evidence seized at 1900 21st Street (dkt. #97) be **DENIED**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) - (C), Federal Rule of Criminal Procedure 59(a) - (b), and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any order or recommendation herein or part thereof may be filed within ten days of the date of service of this recommendation and order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to object in accordance with the rules cited herein waives your right to review.

**SO ORDERED** this <u>22nd</u> day of December, 2006, at Milwaukee, Wisconsin.

<u>s/ William E. Callahan, Jr.</u>
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge

16

Case 2:06-cr-00100-PP   Filed 12/22/06   Page 16 of 16   Document 120